# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| THOMAS KMAK, an Individual, | |
| Plaintiff, | |
| v. | No. |
| AMERICAN CENTURY INVESTMENTS, INC., a Missouri Corporation, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT FOR DAMAGES

Thomas Kmak, for his Complaint against Defendant American Century Investments, Inc., alleges as follows:

## PARTIES

1. Plaintiff Thomas Kmak, an individual and resident of Arizona, is a former employee and former shareholder of Defendant American Century Investments, Inc.

2. Defendant American Century Investments, Inc. is a corporation organized and existing under the laws of the State of Missouri, resides in this Judicial District and has its place of business at 4500 Main Street, Kansas City, Missouri 64141.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship between Mr. Kmak, a resident of Arizona, and Defendant, a resident of Missouri, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), in that Defendant resides in this judicial district, the contract that is the subject of this action is governed by Missouri law and a substantial part of the activities giving rise to the claims alleged herein occurred in this District.

**NATURE OF THE CASE**

5. Mr. Kmak brings this action to redress Defendant's willful and retaliatory exercise of its contractual right of redemption, which amounted to a breach of its duty of good faith and fair dealing in the performance of two Stock Restriction Agreements it entered into with him. As a result of Defendant's wrongful and vindictive conduct, Mr. Kmak has incurred significant monetary losses. Accordingly, Mr. Kmak seeks monetary damages to compensate him for the financial loss he has incurred as a result of Defendant's conduct.

**FACTUAL BACKGROUND**

**Thomas Kmak Builds a Valuable Business for American Century**

6. Defendant is, and at all times relevant herein has been, an investment management firm that is in the business of, among other things, managing mutual funds for retirement plans marketed to corporations and individuals.

7. Defendant hired Mr. Kmak on February 1, 1990 to build a daily valuation defined contribution recordkeeping business for what was then known as Twentieth Century Investments.

8. Since his employment in 1990, and until his departure on October 1, 2007, in his initial role as National Coordinator, Defined Contribution Services and later as Chief Executive Officer of Defendant's Retirement Plan Services division, Mr. Kmak built up and developed the Retirement Plan Services division. Under his direction and supervision and during the 17-year

tenure of Mr. Kmak's leadership, the division grew from 5 employees administering $0 million in defined contribution plan assets to more than 1,100 employees managing more than $115 billion in defined contribution plan assets. Mr. Kmak worked incredibly hard to build this company for American Century, often working extremely long hours and often forsaking substantial amounts of vacation each year.

9. On information and belief, American Century stockholders benefitted greatly from the development of the Retirement Plan Services business in several ways, including:

    a. The business was a key component in JPMorgan's purchase of 45% of American Century stock on January 15, 1998 for more than $915 million, at which time such stock valued at an all-time high for American Century shareholders.

    b. Between January 15, 1998 and June 1, 2003, JPMorgan paid American Century an additional $110 million in transfer payments for the right to operate this business as a joint venture with American Century.

    c. On June 1, 2003, JPMorgan acquired American Century's remaining interest in the business for $100 million and renamed the division JPMorgan Retirement Plan Services.

    d. Thereafter, from June 1, 2003 through December 31, 2009, JPMorgan paid American Century an additional $250 million to use American Century's Information Technology infrastructure which, at the time, was partially being used by the Retirement Plan Services division.

    e. As part of a lawsuit between JPMorgan and American Century, JPMorgan paid American Century $373 million for violation of a Revenue Sharing Agreement which was in no way, shape or form attributable to actions on Mr. Kmak's behalf.

f.  Finally, on information and belief, from the inception of the division in 1990 American Century received management fees and other revenues from clients of Retirement Plan Services totaling hundreds of millions of additional dollars.

10. All told, American Century shareholders received more than $2 billion in revenues directly and indirectly from JPMorgan and clients, for a business that was started and led by Mr. Kmak for the overwhelming majority of its growth.

**Thomas Kmak Exercises Stock Options in American Century Privately Held Stock**

11. Between 1998 and 2003, Defendant adopted Stock Option Plans that provided Mr. Kmak and other employees and officers of Defendant, including other employees and officers of Defendant's Retirement Plan Services division, to acquire shares of the common stock in Defendant (the "Stock Option Plans"). Pursuant to the Stock Option Plans Mr. Kmak entered into Stock Option Agreements with Defendant.

12. To facilitate Mr. Kmak's, and other of its employees' and officers,' exercise of rights under the Stock Option Plans, Defendant established a relationship with the Country Club Bank, of Kansas City, Missouri (the "Bank"), under which the Bank would provide loans to Defendant's employees and officers to enable them to exercise their stock options, which loans then would be secured by the Defendant's stock issued to the employees and officers. Pursuant to this relationship, Mr. Kmak entered into loans with the Bank, and pledged the common stock issued to him by Defendant to secure such loans.

13. On October 10, 2003, pursuant to his exercise of his rights under the Stock Option Plans, and the Option Agreements, Mr. Kmak entered into a Stock Restriction Agreement For Exercise of Stock Option with Defendant (the "2003 Agreement"), attached hereto as **Exhibit A**. Under the 2003 Agreement, Mr. Kmak purchased 31,000 shares of Defendant's common stock

for $14.10 per share, and purchased 37,500 shares of Defendant's common stock for $14.85 per share.

14. On April 28, 2005, Mr. Kmak exercised further rights under the Stock Option Plans, and entered into a second Stock Restriction Agreement For Exercise of Stock Option with Defendant (the "2005 Agreement"), attached hereto as **Exhibit B**. Under the 2005 Agreement, Mr. Kmak elected to purchase 169,500 shares of Defendant's Class A common stock. Mr. Kmak purchased 12,500 shares for $13.30 per share; 75,000 shares for $19.68 per share; 32,000 shares for $25.69 per share; and 50,000 shares for $16.92 per share.

15. Including the taxes attributed to the exercise of these options, Mr. Kmak exercised options for a total of 238,000 shares for a total purchase price of $4,742,828.

16. Paragraph 2(h) of the 2003 Agreement granted Defendant a continuing right to call any of the shares purchased by Mr. Kmak for repurchase, in exchange for the payment in cash of the most recent value of those shares as of the end of the preceding month.

17. Paragraph 2(h) of the 2005 Agreement also granted Defendant a continuing right to call any of the shares purchased by Mr. Kmak for repurchase, in exchange for the payment in cash of the most recent value of those shares as of the end of the preceding month.

18. On information and belief, numerous other employees and officers of Defendant, including other employees and officers of its Retirement Plan Services division, were similarly offered and acquired common stock of Defendant under the Stock Option Plans. On information and belief, numerous employees and officers of Defendant exercised their option to acquire common stock issued by Defendant on terms identical or substantially similar to those offered and issued to Mr. Kmak.

-5-
Case 4:12-cv-01111-BP   Document 1   Filed 08/28/12   Page 5 of 13

19. In October 2007, Mr. Kmak's shares of common stock were valued at $23.86 per share. At that time, when Mr. Kmak left the employment of JPMorgan, he considered whether to sell his shares, but declined to do so because he believed that the shares would increase in value and would not be called unless he went to work for a competitor of ACI. In fact, this was a consideration in Mr. Kmak's decision to leave JPMorgan and start Fiduciary Benchmarks.

### Arbitration Between Defendant and J.P. MorganChase & Co.

20. In 2003, the Retirement Plan Services division of Defendant was acquired by J.P. MorganChase & Co.

21. In connection with the acquisition, Mr. Kmak ceased employment with Defendant and was hired by J.P. MorganChase & Co. as a Managing Director and CEO of the Retirement Plan Services business.

22. Mr. Kmak left the employ of JPMorgan on October 1 of 2007 to start a new business named Fiduciary Benchmarks. The business has become the premier benchmarking service in the retirement industry and includes dozens of nationally known service providers and generates millions of dollars a year in revenue.

23. Subsequently, Defendant was engaged in an arbitration against J.P. MorganChase & Co (the "Arbitration") to resolve a contractual dispute between Defendant and J.P. MorganChase & Co. Mr. Kmak did not participate in any negotiations of the contract at issue in the Arbitration, nor was he a party to the contract.

24. In June 2010, at the request of JPMorgan, Mr. Kmak provided deposition testimony in the Arbitration.

25. In March 2011, at JPMorgan's request, Mr. Kmak testified at the Arbitration hearing.

26. On information and belief, no other employee or officers who holds, or held, common stock shares of Defendant issued under the Stock Option Plans were subpoenaed to testify, or otherwise participated, in the Arbitration on behalf of or at the request of JPMorgan.

## Defendant's Vindictive and Bad Faith Conduct

27. Since the effective dates of 2003 Agreement and 2005 Agreement, the price of Defendant's common stock of the shares has fluctuated greatly, increasing to as much as $25 a share, and falling below $10 a share on numerous occasions.

28. During October 2008, when the value of the shares were less than the prices Mr. Kmak paid for them under the 2003 Agreement and the 2005 Agreement, Mr. Kmak requested Country Club Bank to redeem all shares from American Century pursuant to the terms of the agreements. On that occasion, Country Club Bank informed Mr. Kmak the Defendant was no longer accepting redemptions of stock.

29. From the time Mr. Kmak left Defendant's employ, until after the Arbitration hearing began, American Century never suggested to Mr. Kmak that it would call the stock. Moreover, based on conversations with former CEO Bill Lyons, Mr. Kmak believed the stock only would be called in the event Mr. Kmak left the industry and went to work for a direct competitor such as Fidelity Investments.

30. On May 17, 2011, shortly after the Arbitration hearing, Mr. Kmak received a letter from Defendant to "remind" Mr. Kmak that pursuant to Section 2(h) of the Stock Restriction Agreement, Defendant had the right to call Mr. Kmak's shares of Defendant's stock at any time, and that the price of the stock, based on an April 30, 2011 valuation, was $15.77 a share. This "reminder" was sent to Mr. Kmak after the 10th day of the month in which Mr.

Kmak could have exercised his options using the stock price as of the end of the prior month. On information and belief, the "reminder" was not sent to any other shareholders.

31. Mr. Kmak, who still had a multi-million dollar loan with the Bank (facilitated and encouraged by the Defendant), which was secured by the stock, contacted Defendant directly to inquire as to why the stock was being called at this time since at no time in the past had Defendant sent such a letter to Mr. Kmak. Mr. Kmak was not given any additional insight other than that "the letter speaks for itself."

32. Mr. Kmak, with great concern regarding the amount of the loan and the financial hardship the call of shares would impose on his family, then contacted James Stowers III in an attempt to understand why Defendant decided to call Mr. Kmak's shares.

33. On information and belief, Mr. Stowers discussed with American Century Chairman of the Board Dick Brown the Defendant's decision to call Mr. Kmak's shares. Thereafter, Mr. Stowers informed Mr. Kmak that the Defendant would not be calling the stock, but instead was simply reminding Mr. Kmak that Defendant "could" call the stock. Indeed, in a September 1, 2011 email, Mr. Stowers urged Mr. Kmak to enjoy an upcoming vacation planned to celebrate his thirtieth wedding anniversary.

34. Consistent with its conduct in prior years, by letter dated on December 5, 2011, Defendant notified Country Club Bank that Mr. Kmak would receive its annually declared dividend, which was to be $0.80 per share for the year 2011, including the 238,000 shares of Defendant's stock subject to call rights under the 2003 Agreement and 2005 Agreement.

35. On information and belief, Defendant received a substantial and favorable monetary judgment in connection with the Arbitration, which was paid and/or became final between December 6, 2011 and December 9, 2011.

36. On information and belief, Defendant thereafter sent to the Bank a revised list of shareholders entitled to receive dividends, and the revised list now excluded Mr. Kmak.

37. On December 9, 2011, Defendant notified Mr. Kmak that it was exercising its call rights pursuant to the 2003 Agreement and 2005 Agreement with respect to all of Mr. Kmak's 238,000 shares subject to these agreements effective November 30, 2011, based on a $12.37 per share, as valued by the independent appraisal firm of Duff & Phelps LLC ("Duff & Phelps"), which value does not reflect the shareholder's value of the judgment in the Arbitration.

38. On December 28, 2011, Defendant issued a second dividend in the amount of $1.47 per share of Defendant's Common stock. On information and belief, the second dividend of $1.47 resulted from the favorable judgment awarded to Defendant in the Arbitration.

39. Defendant's exercise of its call rights on December 9, 2011 prohibited Mr. Kmak from receiving the dividend of $0.80 per share and the dividend of $1.47 that would otherwise have been payable to him.

40. Defendant called the shares *one day* before such call right was no longer available, knowing that exercise of the call right would lead to a situation where Mr. Kmak could not use the dividend to pay interest on a multi-million dollar loan, thereby causing significant financial hardship and mental anguish to Mr. Kmak and his family.

41. On information and belief Defendant has not exercised its right to recall shares of common stock issued to other employees and officers that are subject to the same or substantially the same rights of recall to which Mr. Kmak's shares were subject. Rather, on information and belief, Defendant chose to exercise its call rights only with respect to Mr. Kmak's shares.

42. On information and belief, in the thirty-eight months between October 2008 and December 2011, the share price of Defendant's stock has been less than $12.37 fifteen times.

For example, on information and belief, in October 2008, the stock price was $10.06. On information and belief, the stock price was $6.78 in February 2009. On information and belief, the stock price was $10.95 in June 2010.

43. Had Mr. Kmak known that Defendant would engage in such vindictive and bad faith conduct, Mr. Kmak would have sold his shares in October 2007 at a share price of $23.86 per share.

## COUNT I

### BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING IN THE PERFORMANCE OF THE CONTRACT

44. Mr. Kmak realleges and incorporates herein paragraphs 1 through 43 of this Complaint.

45. The 2003 and 2005 Agreements are valid and enforceable contracts between the parties, and Mr. Kmak has at all times fully performed his obligations under the Agreements.

46. In exercising its discretion to call Mr. Kmak's shares for repurchase under the 2003 Agreement and the 2005 Agreement, Defendant owed Mr. Kmak a duty of good faith and fair dealing.

47. Mr. Kmak reasonably expected that Defendant would exercise its discretion in good faith, and that as a result, he would participate in the benefits of dividends issued in December 2011. Based on Defendant's representations, Mr. Kmak reasonably expected that he would retain the ability to sell the stock at his option as long as he did not directly work for a competitor of the Defendant.

48. Defendant acted in bad faith and breached its duty of good faith and fair dealing in the performance of a contract by arbitrarily and vindictively exercising its discretion under the Stock Restriction Agreements to call Mr. Kmak's shares of common stock.

49. Defendant's election to recall Mr. Kmak's shares of common stock was not in good faith or pursuant to a legitimate business reason. Rather, on information and belief, Defendant's exercise of its contractual right was arbitrary and vindictive in that Defendant exercised its contractual right to recall the shares with respect to only Mr. Kmak, the only former employee that testified in the Arbitration, at a time that was not the most financially beneficial time for Defendant and/or for the purpose of retaliating for his deposition and Arbitration testimony. Defendant's exercise of its discretion was thus intended and calculated to deprive Mr. Kmak of his annual dividends, and the special dividend resulting from the Arbitration award, and to otherwise retaliate for his sworn testimony in the Arbitration.

50. By recalling Mr. Kmak's shares under the circumstances described herein, Defendant exercised its discretion conferred by the terms of the 2003 Agreement and 2005 Agreement in a manner that evaded the spirit of the transaction and frustrated the purpose of the 2003 Agreement and 2005 Agreement and Mr. Kmak's reasonable expectations. As a result of the foregoing, Defendant breached his duty to act in good faith and fair dealing in its performance under the Agreements.

51. As a proximate result of Defendant's breach of the implied covenant of good faith and fair dealing in the performance of the Agreements, Mr. Kmak has been damaged in an amount in excess of $3.25 million consisting of, among other things, the dividends on the 238,000 shares wrongly called by the Defendant; the difference in the price of those shares in October 2007 ($23.86 per share) and when Defendant wrongly called them in December 2011 ($12.37 per share); and the difference in the share price in October 2007 and when Mr. Kmak sold his remaining shares in April 2012.

-11-
Case 4:12-cv-01111-BP   Document 1   Filed 08/28/12   Page 11 of 13

## PRAYER FOR RELIEF

WHEREFORE, Mr. Kmak respectfully requests that the Court enter its order and judgment:

A. Adjudicating and decreeing that Defendant breached the implied covenant of good faith and fair dealing in the performance of the 2003 Agreement and 2005 Agreement;

B. Awarding compensatory damages in the amount of at least $540,260 or an amount to be determined at trial to compensate Mr. Kmak for all dividends owed for 238,000 shares of Defendant's Class A common stock between December 6, 2011 and December 9, 2011.

C. Awarding compensatory damages in the amount of $2,734,620 or an amount to be determined at trial to compensate Mr. Kmak for the loss he has incurred between the average share price of $23.86 in October 2007, when Mr. Kmak declined to sell his shares, versus a redemption price of $12.37 for the shares that were called in bad faith by the Defendant.

D. Awarding Mr. Kmak his costs and expenses of this action, including attorneys' fees; and

E. Granting Mr. Kmak such other and further relief as the Court deems just and proper.

Dated: August 28, 2012

          s/Theodore A. Kardis
          Theodore A. Kardis, MO Bar #44142
          tkardis@dmhk-law.com
          DOUGHERTY, MODIN, HOLLOWAY & KARDIS
          The Offices at Zona Rosa
          7200 N.W. 86th St., Suite D
          Kansas City, MO 64153
          (816) 891-9990
          (816) 891-9905 (fax)

Peter B. Newton
Tonya G. Newman
Andrew G. May
*Pro Hac Vice Motions Pending*
NEAL GERBER & EISENBERG LLP
2 North LaSalle Street, Suite 1700
Chicago, Illinois 60602
(312) 269-8000

*Attorneys for Plaintiff Thomas Kmak*

## DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, Thomas Kmak, and requests a jury trial on all factual issues in this matter.

DOUGHERTY, MODIN, HOLLOWAY
& KARDIS

By     s/Theodore A. Kardis

NGEDOCS: 1866230.14